WICKER, Judge.
This suit for personal injuries incurred in an automobile accident was tried to a jury which rendered judgment in favor of plaintiff and against her uninsured motorist carrier. The insurance company appeals this judgment, and we affirm.
Plaintiff, Cheryl Keller (Keller) was driving home in rush hour traffic when her car was hit from the rear by defendant, Mary Ann Amedeo (Amedeo) in a car owned by co-defendant, Michael Margiotta (Margiot-ta). Keller suffered personal injuries and sued Amedeo, ABC Insurance Company (Amedeo's alleged insurer), Margiotta, State Farm Insurance Company (Margiot-ta’s insurer), and Allstate Insurance Company (Keller’s own uninsured/underinsured motorist carrier). Keller settled with State Farm for its policy limits of $10,000.00; and she released Amedeo, Margiotta, State Farm, and “all other persons, firms or corporations liable or who might claim to be liable....” Keller reserved her rights against Allstate. Keller then moved to dismiss State Farm from the proceeding.
Allstate filed a “cross-claim” against Amedeo, ABC Insurance Company, Margi-otta, and State Farm, praying for indemnification or contribution from these defendants. As a result of Keller’s release and dismissal, Allstate also dismissed Amedeo, Margiotta, and State Farm from the proceeding.
Keller then discovered that Amedeo, who was living with her parents at the time of the accident, might be covered as a member of her parents’ household under an insurance policy issued by Fireman’s Fund Insurance Company. Amedeo joined Fireman’s Fund, whose policy allegedly would have provided an additional $10,000.00 of insurance coverage for this accident. Allstate, however, never amended its “cross claim” to join Fireman's, although this information was available to it almost one year prior to trial.
The parties prepared pre-trial memoran-da pursuant to an order by the trial judge. The provisions of that order stated, “It shall be mandatory that each party file a witness list thirty days prior to the trial date.... Any witness not listed will be *311 prohibited from testifying.” Less than thirty days prior to trial, Keller amended her pre-trial order to list Dr. Chris Nunier, a chiropractor.
Fireman’s Fund moved to be dismissed from the suit on the morning of the trial. The grounds for the dismissal were alternatively exceptions of res judicata or no cause of action, based upon Keller’s release of “all other persons, firms or corporations liable or who might claim to be liable....” The trial court sustained the exception of no cause of action of Fireman’s Fund and dismissed that insurance company. The judge advised counsel that Keller’s recovery would not be reduced in any way by this dismissal; and counsel for Keller concurred in the dismissal, while counsel for Allstate opposed it. This dismissal has not been appealed by either party.
Allstate then asked the court to exclude testimony by Dr. Nunier, since he had not been listed as a witness in accordance with the trial judge’s pre-trial order. The judge, finding that Allstate would not be prejudiced by the inclusion of Dr. Nunier as a witness, ruled that he should be permitted to testify.
Keller presented her case and moved the court for a directed verdict on the issue of liability. The court granted the directed verdict and removed this issue from consideration by the jury, which considered only the question of damages suffered by Keller. The jury returned a verdict in favor of Keller in the amount of $35,000.00: $15,-000.00 for past, present and future medical expenses; $15,000.00 for past, present and future pain and suffering; and $5,000.00 for past, present and future mental pain. The trial judge rendered judgment in the amount of $25,000.00, reflecting Keller’s prior $10,000.00 settlement with State Farm; but he refused to credit Allstate with the alleged $10,000.00 Fireman’s Fund policy.
Allstate raises three issues: (1) it should have been allowed a $10,000.00 credit for the Fireman’s Fund policy; (2) Dr. Nunier should not have been allowed to testify; and (3) the damages awarded were excessive and an abuse of the trial court’s discretion.
We see no abuse of the trial judge’s discretion in permitting Dr. Nunier to testify. His testimony was substantially cumulative of other medical testimony. Furthermore, the trial judge has the authority to modify his pre-trial order. La.-C.C.P. art. 1551.
Keller was injured January 29, 1982;[1] and in February she sought help for her injuries from Dr. Leroy Stagni, a chiropractor. He found muscle spasm, a limited range of motion, and a flattened cervical curve (the normally curved neck was being held in a straight position). His diagnosis was neck sprain with neuralgia, probably caused by the accident. He saw and treated Keller four more times in February.
Dr. David Aiken, a general practitioner and general surgeon, examined Keller in February 1982. He found muscle spasm, tenderness, and a limited range of motion, probably caused by the accident. His diagnosis was cervical sprain with nerve root involvement. He saw and treated Keller again in March, April, and July; and he recommended a neurological consult. The last visit was in January of 1983, and Dr. Aiken felt Keller’s condition was probably permanent.
Keller saw Dr. David Jarrott, a neurosurgeon, in September of 1982. He found tenderness, a limited range of motion, and diminished reflexes attributable to a neck injury. Dr. Jarrott saw Keller again in May of 1983. He diagnosed cervical disc syndrome and a 10% disability.
Keller consulted Dr. Ruth Jackson, an orthopedist specializing in cervical problems, in April of 1983. She found tenderness, muscle spasm, a limited range of motion, impaired reflexes and sensation, a flattened cervical curve, narrowing of the disc space, bone spurs, and a vertebral misalignment. She diagnosed cervical sprain, spondylosis (narrowing of disc *312 spaces and spurring) and nerve root irritation caused by Keller’s accident. Keller saw Dr. Jackson again in December of 1983 and March of 1984, and Dr. Jackson concluded that Keller’s disability was permanent.
The testimony of all these experts in the fields of chiropractic, general practice and surgery, neurosurgery, and orthopedics is generally in agreement. All testified to varying degrees of limited range of motion, tenderness, muscle spasm, flattened cervical curve. All diagnosed cervical sprain with some degree of nerve involvement, probably related to Keller’s accident. None testified that any intervening injury was significant.
Keller sought treatment from Dr. Chris Nunier, another chiropractor, in March of 1985. He reached the same findings as the other doctors: weakness, a limited range of motion, diminished sensitivity and reflexes, a flattened cervical curve, bone spurs, and subluxation (vertebral misalignment). His diagnosis was substantially the same: nerve root compression probably caused by Keller’s accident. He treated Keller from March through November of 1985, until the trial. Since Dr. Nunier’s testimony was no more than cumulative, we find no prejudice to Allstate in allowing him to testify.
The “dissenting opinion” was that of Dr. Russell Grunston, an orthopedist, who examined Keller in September 1984. He found no symptomology on examination or x-ray. However, the testimony of physicians who examine and treat an injured party are generally entitled to greater weight than that of a physician who only examines the party once. Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir.1982). The jury did not abuse its discretion in apparently disregarding Dr. Grunston’s testimony.
The almost unanimous opinion of these experts, combined with proved medical expenses of over $4,500.00, certainly supports a conclusion by the jury that Keller was rather seriously injured. In addition, Keller’s testimony and that of her witness showed continuing problems with pain and a definite change for the worse in Keller’s lifestyle, relationships with children and friends, and ability to earn a living. We can see no abuse of discretion by the trier of fact in its award of damages. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Allstate claims that Keller failed to prove Amedeo was an uninsured or underinsured motorist.
The object of that [uninsured motorist] legislation is to promote full recovery for damages by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured_ The statute is to be liberally construed to carry out this objective of providing reparation for those injured through no fault of their own.
Hoefly v. Government Employees Insurance Co., 418 So.2d 575, 578 (La.1982). (Citations omitted) See also Carona v. State Farm Insurance Co., 458 So.2d 1275 (La.1984); Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985).
The record shows on its face that Fireman’s Fund did not provide liability insurance to Amedeo, as the trial judge dismissed that insurance company from the suit the morning of trial. Consequently, this source of recovery, even if it had once existed, did not cover Keller’s damages at the time of the trial.
Where the liability insurance on the automobile causing the insured’s damage is ineffective for any reason to pay to the insured this required amount, then the vehicle should be deemed “uninsured” for the purpose of resolving recovery of uninsured motorist protection. The statute should be construed to mean the effective liability coverage.
Butler v. MFA Mutual Insurance Co., 356 So.2d 1129, 1133 (La.App. 2d Cir.1978). (Emphasis by the Court.) This dismissal is sufficient to meet Keller’s burden of proving Amedeo’s uninsured status. L.S.A.R.S. 22:1406 D; Scherer v. Chaisson, 469 So.2d 510 (La.App. 3rd Cir.1985).
*313 Allstate also claims that it should have been awarded a $10,000.00 credit, reflecting the coverage that might have been furnished by the Fireman’s Fund policy of insurance. The trial judge ruled that this credit, if it existed, was in the nature of a setoff which must be pleaded specifically as an affirmative defense.
Article 1005. Affirmative defenses The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.
“The purpose of the requirement that an affirmative defense be specially pleaded is to give fair notice of the nature of the defense and to prevent surprise.” Georgia Pacific Corp. v. Ardenwood-Melrose, Inc., 348 So.2d 748, 750 (La.App. 1st Cir.1977). This listing of affirmative defenses in La.-C.C.P. 1005 is not exclusive but is only illustrative. (“ ... and any other matter constituting an affirmative defense.”) Webster v. Rushing, 316 So.2d 111 (La.1975).
While Allstate and the trial judge referred to Allstate’s claims as “setoff”, what is really being urged is “extinguishment.” Allstate argues that its obligation to Keller is extinguished to the extent of $10,000.00 by Keller’s inadvertent release of Fireman’s Fund. However, whether the theory behind the defense is called setoff, extinguishment, or compromise, the result is the same. “Matters of defense set up in avoidance or extinguishment of an obligation admitted or proved to have once existed must be specially pleaded.” Natchez Pecan Shelling Co. v. Chas. P. Wagner & Bro., Inc., 70 So.2d 598 (Orl.La.App. 1954). Specifically, “an insurer has the duty to prove the facts which it asserts exculpate it from liability under exclusionary provisions of the policy.” Lombard v. Manchester Life Ins. Co., 406 So.2d 742, 748 (La.App. 4th Cir.1981).
The Third Circuit, in the workman’s compensation case of Lofton v. Louisiana Pacific Corp., 410 So.2d 1171 (1982), considered whether or not the insurer could claim a credit for severance payments it had made to the plaintiff in lieu of compensation. The court held, at p. 1174, that “The extinguishment of an obligation in any manner is an affirmative defense and must be pled or it is lost.” (Emphasis added.)
Furthermore, “allowing such a credit [for the share of a previously-released insurer] would frustrate the clear legislative aim of the UM statute to promote full recovery by the victim.” Jordan v. Sweeney, 467 So.2d 569, 573 (La.App. 1st Cir.1985).
We hold that Allstate’s claim of a credit in its favor was an affirmative defense which should have been specifically pleaded under L.S.A.-C.C.P. art 1005. The trial judge was correct in excluding testimony on this point.
AFFIRMED.

. Keller was subsequently involved in an altercation and a fall downstairs.