DENNIS, Justice.
We granted certiorari to consider whether, in an underinsured motorist case, the existence of additional liability insurance covering the alleged underinsured motorist is an affirmative defense which the UM carrier is required to set forth in its answer. The trial court allowed the plaintiff to recover from her UM carrier an amount in damages exceeding the policy limits of coverage on the offending vehicle. Evidence of an additional liability insurance policy applicable to the underinsured motorist was excluded on the ground that the existence of the additional policy constituted an affirmative defense which the carrier failed to plead in its answer as required by law. The court of appeal affirmed. 501 So.2d 309 (La.App. 5th Cir.1987). We reverse and remand. The existence of liability coverage disproving the tortfeasor’s lack of liability insurance is not an affirmative defense which the UM carrier is required to set forth in its answer. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff’s demand on its merits. Because the claimant must plead and prove lack of insurance in order to recover in a UM case, the UM carrier’s attempt to disprove this fact neither raises a new matter nor constitutes a defense which assumes the claimant’s allegations to be true; it is a negative defense which seeks to disprove an essential element of the claimant’s theory of the case.
The automobile driven by Cheryl Keller, the plaintiff, was struck from the rear by a vehicle driven by Mary Ann Amedeo, defendant, and owned by Michael Margiotta, defendant. Due to the accident Keller suffered a cervical strain and other injuries. She filed suit against her uninsured motorist carrier, Allstate Insurance Company, Margiotta and his insurer, State Farm Insurance Company, and Amedeo and ABC Insurance Company. “ABC Insurance Company” apparently was a pseudonym by which Keller intended to designate any other insurer which may have issued a policy affording Amedeo liability insurance applicable to the accident.
Keller settled with State Farm, Margiot-ta’s insurer, by accepting its policy limit, $10,000, and by signing a release of her claims against Amedeo, Margiotta, State Farm and “all other persons, firms, or corporations liable or who might claim to be liable”, while reserving her rights against *387 Allstate. Afterwards, Keller discovered that Amedeo might be covered as a member of her father’s household under a policy issued to him by Fireman’s Fund, which would provide an additional $10,000 of insurance coverage. Consequently, Keller amended her petition to add Fireman’s Fund as a defendant. On the day of trial, however, an exception of no cause action filed by Fireman’s Fund was sustained because Keller had released Amedeo and all other persons. None of the parties took an appeal from the trial court’s ruling.
The case was tried before a jury. The parties stipulated that the automobile owned by Margiotta and operated by Ame-deo was covered by a State Farm automobile liability policy with a limit of $10,000. Allstate attempted to introduce a copy of the $10,000 Fireman’s Fund Insurance Company automobile liability policy which had been issued to Amedeo’s father, Joseph Amedeo, and which allegedly provided Am-edeo liability coverage at the time of the accident. However, the trial court sua sponte excluded its introduction on the ground that such evidence would constitute an affirmative defense which Allstate failed to set forth in its answer. Subsequently, Allstate made a proffer of the excluded evidence. Amedeo testified that at the time of the accident she was unmarried and residing with her parents, Joseph and Georgette Amedeo.
The trial court granted plaintiff’s motion for a directed verdict on the issue of Ame-deo’s liability. The jury addressed only the issue of damages and awarded Keller the amount of $35,000. The trial court rendered judgment in her favor and against Allstate on the underinsured motorist claim in the amount of $25,000, reflecting a deduction for the $10,000 settlement with State Farm. The court evidently reasoned that Allstate by stipulation had properly pleaded and proven the existence of $10,-000 State Farm liability insurance coverage upon the offending vehicle, but that it had failed to plead or prove the existence of insurance upon its driver issued by Fireman’s Fund. Therefore, the court allowed a credit of only $10,000 against the total amount awarded.
Allstate appealed contending that the trial court erred in disallowing a $10,000 credit for the Fireman’s Fund policy, in permitting plaintiff’s expert to testify, and in awarding excessive damages. The court of appeal rejected these arguments and affirmed for reasons assigned in its opinion. 501 So.2d 309 (La.App. 5th Cir.1987). Allstate applied for certiorari assigning as error only the court of appeal’s affirmance of the trial court ruling which excluded its proof of the existence of the Fireman’s Fund insurance policy on the ground that Allstate had not pleaded this fact as an affirmative defense. We granted certiora-ri. 503 So.2d 1009 (La.1987).
Affirmative Defense
A defendant’s answer must set forth any matter constituting an affirmative defense. L.C.C.P. arts. 1003, 1005. The trial court ruled that Allstate’s claim as to the existence of liability insurance covering the alleged underinsured driver and a credit for the full amount of its coverage was a matter constituting an affirmative defense which had not been pleaded in Allstate’s answer, and that the insurer could not introduce evidence in proof thereof. In our opinion the trial court fell into error and the Court of Appeal incorrectly affirmed its ruling.
An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff’s demand on its merits. Webster v. Rushing, 316 So.2d 111 (La.1975). Because the lack of insurance on the offending vehicle and its driver is a condition precedent to the applicability of the UM endorsement and a matter which the claimant must plead and prove in order to recover from the UM carrier, Allstate’s proffered evidence of insurance merely controverted a fact needed to establish the claimant’s prima facie case. L.S.A.R.S. 22:1406(D)(6); Campbell v. American Home Assur. Co., 260 La. 1047, 258 So.2d 81 (1972) on remand (La.App. 3d Cir.1972) 264 So.2d 701; Jordan v. Great American Ins. Co., 248 So.2d 363 (La.App. 4th Cir.1971); Macaluso v. Watson, 188 So.2d 178 *388 (La.App. 4th Cir.1966) writ den. 249 La. 743, 190 So.2d 910 (1966). Therefore, the UM carrier’s attempt to defeat the claimant’s action by disproving this essential element of her claim, which neither raised a new matter nor assumed the allegations in the petition to be true, is in reality a negative defense which seeks to refute an essential allegation of the plaintiff's petition.
Uninsured or Underinsured Status
The court of appeal also concluded that proof of the Fireman’s Fund policy covering Amedeo at the time of the accident would not have affected her underinsured status. In the court of appeal’s opinion, the UM statute mandates UM coverage whenever the tortfeasor lacks liability insurance at the time of trial, regardless of the amount of liability insurance the tort-feasor may have been afforded at the time of the accident. Due to the plaintiff’s pretrial release, the court reasoned, Amedeo lacked this insurance because the Fireman’s Fund policy clearly did not provide any liability insurance upon Amedeo for this accident at the time of trial. See 501 So.2d at 312.
The court of appeal’s interpretation is at odds with the words of the uninsured motorist statute. An underinsured motor vehicle is defined as one upon which “liability insurance coverage ... is less than the amount of the damages suffered by an insured ... at the time of an accident ....” La.R.S. 22:1406(D)(2)(b) (Emphasis added). In the statute several methods are provided for making prima facie proof “that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question_” La.R.S. 22:1406(D)(6) (Emphasis added). Two of the methods under this section describe how a claimant may make prima facie proof of lack of insurance “on the date of the accident in question”. La.R.S. 22:1406(D)(6)(a) & (c) (Emphasis added). Constructing these and other provisions of the statute as a whole, we think it is evident that the general rule of the statute is that UM status must be determined as of the time of the accident.
The time-of-the-accident rule is relaxed by law in one instance. An offending vehicle or driver will be considered uninsured when the applicable insurer becomes insolvent within one year after the accident. La.R.S. 22:1406(D)(3). See Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377 (La.1980). Insurers may afford more favorable coverage than that required by law, and policies generally provide that an uninsured highway vehicle includes a vehicle without applicable liability insurance coverage or insured by a company which has denied coverage or become insolvent. W.S. McKenzie & A. Johnson, Insurance Law and Practice, § 110, n. 82 (1986). However, the present case does not involve insolvency or denial of coverage and the UM policy at issue does not in other respects provide greater coverage than that required by law. Consequently, had it been proven that the Fireman’s Fund insurance policy afforded Amedeo liability insurance at the time of the accident in question, Allstate would have been entitled to a credit against the gross judgment for the amount of that insurance.
Remand of Case to Trial Court
Because the trial judge ruled in advance that all evidence of coverage by Fireman’s Fund of the alleged underinsured motorist was inadmissible, Allstate was unable to lay a proper foundation for introduction of the policy, plaintiff was unable to test the authenticity and admissibility of the policy, and plaintiff was foreclosed from introducing rebuttal evidence in an effort to establish that an exclusion from coverage by the policy applied. Under these circumstances, we cannot upon this record make a proper determination of the facts with respect to the Fireman’s Fund policy. Accordingly, in the interest of justice, we will remand this case to the trial court, for the taking of additional evidence and the rendering of a proper judgment in accordance with the evidence and the law as set forth herein.
REVERSED AND REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.