529 So.2d 45 (1988)
Joseph Ricky BABINEAUX, Plaintiff-Appellee,
v.
Divernia DOMINGUE, Neil Domingue, Wallace LeJeune d/b/a Wallace LeJeune Trucking Company, Shelter Insurance Company and State Farm Mutual Automobile Insurance Company, Defendants-Appellants.
No. 87-552.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*46 Ashy & Colvin, D. Warren Ashy, Lafayette, for plaintiff-appellee.
Cooper, Ortego & Woodruff, Calvin E. Woodruff, Jr., Abbeville, for defendants-appellants.
Before DOMENGEAUX, STOKER and KING, JJ.
DOMENGEAUX, Judge.
Joseph Ricky Babineaux commenced these proceedings to recover damages for the injuries he sustained as the result of an automobile accident which occurred on March 8, 1985. Babineaux named as the defendants: (1) Divernia Domingue, the uninsured driver of the automobile in which he was a guest passenger; (2) Neil Domingue, alleged to be the owner of the automobile which Divernia Domingue was driving; (3) Wallace LeJeune d/b/a Wallace LeJeune Trucking Company, (LeJeune), the driver of the vehicle which collided with the Domingue automobile; (4) Shelter Insurance Company, (Shelter), the liability insurer of LeJeune; and (5) State Farm Mutual Automobile Insurance Company (State Farm), the uninsured motorist insurer of Babineaux's father under which the plaintiff was also insured.
Prior to trial on the merits, this case was consolidated with: (1) Divernia Domingue, Et al. v. Wallace LeJeune d/b/a Wallace LeJeune Trucking, Et al., numbered by the Clerk of Court for the Fifteenth Judicial District: 55,350-D; and (2) Antoinette Boutee v. Wallace LeJeune d/b/a Wallace LeJeune Trucking Co., Et al., numbered: 55,357-G. The two above referenced cases have not, however, been appealed.
Babineaux, while riding as a guest passenger in a 1981 Pontiac automobile driven by Domingue, was injured when the Domingue vehicle collided with a 1972 International tractor trailer owned and driven by LeJeune. Subsequent to a trial by jury, a verdict was rendered finding substandard conduct on the part of Domingue and LeJeune and assessing their fault at ninety percent and ten percent, respectively. The jury determined the parties had been damaged in the following amounts: (1) Babineaux, $355,000.00; (2) Boutee, a plaintiff in one of the consolidated cases and also a guest passenger, $132,000.00; (3) Domingue, $22,500.00; and (4) LeJeune, $7,452.21.
Judgment was rendered in accordance with the decision of the jury reflecting the percentage of fault attributed to the defendants, and as pertains to the instant appeal, in favor of Babineaux and against LeJeune, Shelter, Divernia Domingue and State Farm, in solido. State Farm's liability was limited to $25,000.00, the extent of its uninsured motorist policy.
State Farm sought this appeal and contends that as an uninsured motorist insurer it should not be held solidarly liable with Domingue and LeJeune, the tortfeasors, and LeJeune's liability insurer, Shelter. State Farm maintains that Shelter provided LeJeune with $500,000.00 in liability insurance and, although Domingue was uninsured, the total liability exposure only amounts to $489,250.00, $10,750.00 less than the limits of the Shelter policy. The appellant further suggests that this Court's decision in Farnsworth v. Lumbermens Mutual Casualty Co., 442 So.2d 1340 (La.App. 3rd Cir.1983), writ denied, *47 445 So.2d 452 (La. 1984) should be reversed. We concluded, in Farnsworth, relying on the Louisiana Supreme Court decision of Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La. 1982), that uninsured motorist carriers, tortfeasors and tortfeasors' liability insurers were solidary obligors in relation to plaintiffs and that as a result uninsured motorist carriers were "solidarily bound to recompense for the claims of an injured party just as though [they] were the tortfeasor's insurer" Farnsworth, supra, at 1345, quoting, Stroud v. Liberty Mutual Insurance Company, 429 So.2d 492, 501 (La.App. 3rd Cir.1983), writ denied, 437 So.2d 1147 (La. 1983). Subsequent to considerable deliberations on this matter, we believe we are constrained by Hoefly and must, therefore, permit the decision of the District Court to stand. The effect of the Hoefly decision may only be changed by resort to the Supreme Court or the Legislature.
The issue in Hoefly was "whether an automobile accident victim's uninsured motorist carrier [was] solidarily obligated with the tortfeasor so that the victim's timely suit against the latter interrupt[ed] prescription with regard to the insurer." Hoefly, supra, at 576. The Court held that since the tortfeasor and the uninsured motorist carrier were obligated for the same thing, the repair of the innocent automobile accident victim, they were solidary obligors and the Court, to quote Justice Blanche who dissented in Hoefly, thereby, "salvaged a particular plaintiff's claim from prescription." Carona v. State Farm Insurance Company, 458 So.2d 1275, 1280 (La.1984) (Blanche, J., concurring in the Carona result only). The Hoefly Court, although concluding that the object of La. R.S. 22:1406 (1950) (as amended), the uninsured motorist statute, was to promote full recovery by innocent automobile accident victims "by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured", held that the uninsured motorist statute should be liberally construed and that uninsured motorist carriers and tortfeasors were solidarily obligors. Hoefly, supra, at 578 (emphasis added). The Court was of the opinion that:
The uninsured motorist carrier [was] bound by the combined effect of the tortfeasor's wrongful act, the uninsured motorist statute, and the carrier's delivery or issuance for delivery of automobile liability insurance, while the tortfeasor [was] obligated merely because of his delict. Hoefly, supra, at 579.
Uninsured motorist insurance suggests by its very name that it was intended to protect innocent automobile accident victims only when tortfeasors are uninsured or inadequately insured. The statute has, however, been interpreted otherwise by Hoefly and its progeny. Carona, supra; Johnson v. Fireman's Fund Insurance Company, 425 So.2d 224 (La.1982); Harris v. Guitterez, 469 So.2d 1135 (La. App. 4th Cir.1985); Perrilloux v. Bowser, 483 So.2d 1135 (La.App. 5th Cir.1986). Accordingly, following the Hoefly decision, the judgment of the District Court must be affirmed.[1]But see, W. McKenzie and H.
*48 Johnson, 15 Louisiana Civil Law Treatise § 134 (1986); McKenzie and Johnson, Insurance Law, 46 La.L.Rev. 475 (1986); Note, Obligations Uninsured Motorist And Insurer As Obligors In Solido, 58 Tul.R. Rev. 642 (1983).
For the above and foregoing reasons, the judgment of the District Court is affirmed.
All costs of this appeal are assessed against State Farm Mutual Automobile Insurance Company.
AFFIRMED.
STOKER, and KING, JJ., concur and assign written reasons.
STOKER, Judge, concurring.
I concur in the majority's affirmation of the trial court but do not subscribe to all the pronouncements contained in the majority opinion. In this case the appellant uninsured motorist carrier is not seeking a credit for the liability carrier's limits or for what the liability carrier may pay under its limits. There is no third party demand over against the liability insurer and its insured for contribution or reimbursement. In its appeal here the appellant has simply made a frontal assault against the concept of solidarity between automobile insurance carriers, one of which is an uninsured motorist carrier, and the other a liability insurer. What the appellant seeks is an outright repudiation of the solidarity concept announced by the Louisiana Supreme Court in Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La. 1982). On its face the appellant's argument appears to be an attack on our case of Farnsworth v. Lumbermens Mutual Cas Co., 442 So.2d 1340 (La. App. 3d Cir. 1983), writ denied, 445 So.2d 452 (La. 1984).
The essence of appellant's argument on appeal is that Farnsworth represents an aberrant extension of Hoefly insofar as it makes uninsured motorist carriers solidarily liable with liability insurers. Since that is the gravamen of the appeal, I agree that appellant should be denied relief.
The ruling and legal holding of the Louisiana Supreme Court in Hoefly v. Government Employees Insurance Company, supra, is confined to the determination that "an automobile victim's uninsured motorist carrier is solidarily obliged with the tort-feasor so that the victim's timely suit against the latter interrupts prescription with regard to the insurer." The Hoefly decision is confined to the effect of the solidarity in interrupting prescription.
In Hoefly the Supreme Court concluded by stating the following caveat at page 580:
"Allstate argues that the conclusion we have reached will cause all effects of solidarity to be applied in uninsured motorist cases. Care should be taken by civilian attorneys and jurists to be on guard against applying one segment of the code in isolation from others. Neither the Civil Code nor the revised statutes were intended to be applied in this manner. A full delineation of the relationship between the tortfeasor and the uninsured motorist carrier after payment of the debt owed by them solidarily is beyond the scope of this case. However, it is clear that the Civil Code recognizes that debtors, although solidarily bound for the creditor's benefit, may have differing relationships among themselves. The conclusion that debtors are solidarily bound does not alone determine the rights and obligations of the debtors in relation to each other."
Although Hoefly left open the question of how the concept of solidarity might be applied beyond the question of interruption of prescription, later expressions of the Supreme Court indicate that an uninsured or underinsured motorist carrier is obligated to pay damages as a solidary obligor with a tort-feasor. This is the holding of Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La. 1982) which cites Hoefly for its holding. This court construed Hoefly and Johnson in 1983 in Farnsworth v. Lumbermens Mut. Cas. Co., 442 So.2d 1340 (La.App. 3d Cir.1983), writ denied, 445 So. 2d 452 (La. 1984). In Farnsworth there were two tort-feasors, one of which was *49 insured and one of which was not. The injured parties sued the carrier for the insured tort-feasor and their uninsured motorist carrier. The jury found both drivers to be equally at fault but the formal judgment cast the liability carrier solely for the plaintiffs' entire damages. On appeal the liability carrier sought to have the uninsured motorist carrier cast solidarily with it. This court agreed on the basis of the holdings in Hoefly and Johnson. The trial court judgment was amended on appeal to cast the uninsured motorist carrier along with the liability carrier, subject to the uninsured motorist carrier's policy limits, and the Supreme Court denied writs in the case.
Farnsworth is limited to holding the uninsured motorist carrier should be cast in judgment as a solidary obligor with the liability carrier. The appeal was taken by the liability carrier alone; the plaintiffs did not appeal. While there might be an implication implicit in the Farnsworth decision that both carriers, as between themselves, must share in the discharge of the judgment obligation, the decision does not go that far. We said that the impact of the decisions in Hoefly, Johnson and others led us to conclude that an uninsured motorist carrier is "now statutorily bound to recompense for claims of an injured party just as though it were the tortfeasor's insurer." This holding reflects the rights of accident victims to a solidary judgment against both liability and uninsured motorist carriers. In retrospect, since the plaintiffs did not appeal, it is conceivable that we could have rejected the liability carrier's appeal without violence to Hoefly and Johnson. This would be so on the ground that a liability carrier has no claim against an uninsured motorist carrier.
Farnsworth did not reach the question of rights inter sese between liability and uninsured motorist carriers. It simply held that a judgment in favor of injured parties where both carriers are sued should be a solidary judgment in favor of the plaintiffs. The question of rights inter sese between the carriers was not addressed, and as the issue on appeal was framed, there was no need to address the question. In Hoefly the Supreme Court noted that the relationship between a tort-feasor (which would include the tort-feasor's liability carrier) and uninsured motorist carriers was beyond the scope of the case; but the Supreme Court said: "However, it is clear that the Civil Code recognizes that debtors, although bound for the creditor's benefit, may have differing relationships among themselves." (Emphasis mine) The Supreme Court cited Civil Code articles 2103, 2104 and 2106 which are now embodied in revised form in Articles 1804, 1805 and 1806.
In Johnson the Supreme Court made the following statement at page 227 (425 So. 2d):
"The uninsured motorist carrier who either totally or partially pays the employee automobile accident victim for the damages he has suffered is subrogated to the employee's action against the uninsured or underinsured tortfeasor, reserving to the employee who has been only partially compensated for his loss a lawful cause and preference over the insurer for payment out of the tortfeasor's property. La.C.C. arts. 2160-62. La.R.S. 22:1406(D)(4); Bond v. Commercial Union Assurance Co., 407 So.2d 401, 411 (La.1981)." 425 So.2d at 227.
The cited Civil Code articles are carried over in new Articles 1828 and 1829.
The subrogation concept in the context with which we are concerned was given an interesting construction in Fertitta v. Allstate, 462 So.2d 159 (La. 1985). In that case the Supreme Court reaffirmed Hoefly. There an uninsured motorist carrier settled out of a suit before trial, but as part of the settlement with the plaintiff the uninsured motorist carrier waived its subrogation rights to recoup its payment from parties liable for the damages. The Fertitta court reaffirmed the holding of solidarity between uninsured motorist and liability carriers and gave the liability carrier credit against the judgment rendered in favor of the plaintiff for the amount paid by the uninsured motorist carrier in the settlement.
*50 In Fertitta the Supreme Court said at pages 162 and 163:
"If State Farm [the uninsured motorist carrier] had paid $32,000 [the settlement amount] to plaintiff without executing the waiver, undoubtedly State Farm could recover that amount from the proceeds of the judgment against McCarron [the tortfeasor]. La.R.S. 22:1406D(4). See also La.C.C. Art. 2106. Under those circumstances, plaintiff clearly would only be entitled to the proceeds of the judgment in excess of $32,000."
LSA-R.S. 22:1406D(4) is the subrogation provision of Louisiana's uninsured motorist statute.[1] Civil Code Article 2106 (now embodied in Article 1804) provided:
"Art. 2106. If the affair for which the debt has been contracted in solido, concerns only one of the coobligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities."
Fertitta presented special circumstances which permitted the liability carrier to claim credit for settlement payments made by an uninsured motorist carrier. Fertitta establishes that the Louisiana Supreme Court does not consider that a credit or reduction which affects a plaintiff tort victim's recovery, given in favor of a defendant because of another defendant's payment, conflicts with the Hoefly holding.
In Keller v. Amedeo, 512 So.2d 385 (La. 1987) the Supreme Court indicated that an uninsured motorist carrier would be entitled to a credit to the extent that there was coverage under another carrier's liability policy and remanded the case for reception of evidence as to the policy provision. In Keller the plaintiff joined Fireman's Fund Insurancee Company as a liability insurer of the tort-feasor. Fireman's Fund was dismissed from the suit on an exception of no cause of action. In the trial Allstate Insurance Company, the plaintiffs' uninsured motorist carrier, attempted to introduce a copy of Fireman's Fund Insurance Company policy but the trial judge excluded the policy. The Supreme Court held exclusion of the policy was error and stated that "had it been proven that Fireman's Fund insurance policy afforded Amedeo liability insurance at the time of the accident in question, Allstate would have been entitled to a credit against the gross judgment for the amount of that insurance." In the interest of justice the Supreme Court remanded the case for additional evidence of the provisions of the policy of Fireman's Fund. The quoted statement was the foundation for the remand and acted as an instruction as to the law to the lower courts. Under the circumstances it would seem to me that the Supreme Court's statement concerning credit was not obitur dicta. It was necessary to a decision in the case.
After Keller v. Amedeo, supra, was decided this court handed down an opinion in Clement v. Trinity Universal Ins. Co., 515 So.2d 651 (La.App. 3d Cir.1987), writ denied, 519 So.2d 126 (La. 1988). The following is the entire sententious opinion written by Judge Laborde:
"Plaintiffs-appellants, Austin and Margie Clement, appeal the judgment of the trial court dismissing defendant-appellee, Trinity Universal Insurance Company of Kansas, Inc., from suit with prejudice. Appellants assert that the trial court erred in granting the uninsured motorist carrier (Trinity) credit for sums paid by a fully insured joint tortfeasor.
Parties to this controversy stipulated several facts. Among the stipulations is the amount of damages sustained by appellants, to wit, $126,799.50. Further *51 stipulation establishes that appellants have received sums in excess of that amount from insurance companies other than Trinity. Appellants are not unprotected by liability insurance; therefore, their UM insurance coverage is not available to them. The lack of insurance on the offending vehicle and its driver is a condition precedent to the applicability of the UM endorsement and a matter which the claimant must plead and prove in order to recover from the UM carrier. Keller v. Amedeo, 512 So.2d 385 (La. 1987). Here, plaintiff failed to establish the condition precedent. Please see the trial court's reasons for judgment annexed hereto.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to plaintiffs-appellants, Austin and Margie Clement.
AFFIRMED."
The sums received by plaintiffs referred to above were paid by a liability insurer in a settlement and release. The Supreme Court denied a writ in this case.
It does not seem to me to require extensive citation of authority to show that an injured party may not recover more than his damages and that recovery from one solidarily liability insurer will preclude further recovery from another insurer. See Fertitta v. Allstate Ins. Co., supra, at page 163, headnotes 8 and 9. Under the circumstances it seems to me that Clement is correct. In Clement the plaintiffs had been paid their full damages. What of the situation where a judgment is rendered against a liability insurer which has not yet been paid? Can an uninsured motorist carrier solidarly liable with the liability carrier claim credit for the amount for which the liability carrier is cast? It seems to me that Keller v. Amedeo, supra, stands for that proposition. If that is so, then in the case before us, State Farm could have asked for credit for the amount of Shelter's liability which would have wiped out any obligation of payment by State Farm. I do not think we have to answer that question, and as this is a concurring opinion, I will not express any opinion other than a tentative one and will reserve judgment on the subject.
I have considered whether we ought to answer the question just raised in order to render justice under LSA-C.C.P. art. 2164 and hold that, although the appellant did not ask for such relief, we should cut through the legal red tape and grant State Farm its obvious subrogation rights against Shelter in the form of credit. I have concluded that we should not, and so I concur in affirming the lower court's action. As noted in the beginning of this concurring opinion, the appellant wants its cake and wants to eat it too. It wants relief from liability but wants it on the basis of a repudiation of the concept of solidarity between uninsured motorist carriers and liability carriers. Such relief would have to come from the Supreme Court.
In summary it would seem to me, that although uninsured motorist carriers are solidary obligors with tort-feasors and their liability insurers, the impact of this liability extends only to injured claimants. As between themselves the ultimate liability is different. The expressions in the cases, from Hoefly on, relative to these principles and the subrogation rights of uninsured motorists under the Civil Code and the uninsured motorist statute delineate this relationship. It is obvious that as between insurers the obligation of a liability insurer is primary and that of an uninsured motorist carrier contingent. Consequently, absent special circumstances such as were present in Fertitta v. Allstate, supra, the liability carrier cannot seek reimbursement from an uninsured motorist carrier or seek credit for payments made by the uninsured motorist carrier. However, the reverse is true. Nevertheless, an uninsured motorist carrier cannot, under Hoefly, avoid its solidary liability in favor of injured parties on the ground that its liability only exceeds the limits of liability of a liability insurer.
It seems to me that the proper course for an uninsured motorist carrier, when sued by an insured, is to third-party the tort-feasor and any liability insurer carrier of the *52 tort-feasor. As the uninsured motorist will be cast in solido with these parties where the tort-feasor is liable, a judgment over for any sums the uninsured motorist carrier is required to pay would afford protection. If the principle of Keller v. Amedeo, supra, proves to be settled law, uninsured motorist carriers might not have to pay at all, or only have to pay any excess over limits of liability coverage. Reservations to protect against insolvency of a liability carrier could hold uninsured motorists carriers to their contingent liability until judgment creditors are satisfied.
In conclusion I note that the appellant has neither sought to enforce subrogation rights over against the liability carrier nor sought credit for the amount the liability carrier has been cast in judgment. Also it has not pitched its case on an assertion that plaintiff failed to prove lack of insurance on the offending vehicle driven by LeJeune. Consequently, I concur in the affirmance of the trial court's judgment.
KING, Judge, concurring.
I concur only in the result reached by the majority under the facts presented but also have questions concerning the exact relationship between a victim, a tortfeasor, the tortfeasor's automobile liability insurance carrier, and the victim's own uninsured/underinsured motorist carrier. The confusion about these relationships is illustrated by the statements made by the authors of the majority opinion and concurring opinion and what appears to me to be the present confused state of the jurisprudence. I would respectfully suggest that the Supreme Court should clarify these relationships at its earliest opportunity.
NOTES
[1] Although not cited as authority by either party on appeal, thoroughness mandates that we acknowledge and distinguish the case of Clement v. Trinity Universal Insurance Company of Kansas, Inc., 515 So.2d 651 (La.App. 3rd Cir.1987), writ denied, 519 So.2d 216 (La. 1988). The issue in Clement was whether a UM carrier was entitled to a credit for sums paid the victim by a fully insured joint tortfeasor subsequent to receipt of compensation by the victims in excess of their stipulated damages. Clement is distinguishable from the instant case principally by the fact that the victims had been fully compensated. The risk that the victims would not have been fully compensated, had one or more of the solidarily bound tortfeasors proven to be insolvent, did not exist.

Keller v. Amedeo, 512 So.2d 385 (La. 1987) cited by Clement as authority also merits our attention. Dicta in Keller suggets that a UM carrier might be entitled to a credit against a judgment in favor of its insured prior to the insured/victim being fully compensated. The credit in issue was for the full limits of a liability insurance policy against which the victim unknowingly relinquished her right to proceed. Keller is distinguishable from the instant case by the fact that the victim released the obligor in question. It is interesting to note and, we believe, nurtures unsettled questions that Hoefly and its progeny were not discussed.
[1] LSA-R.S. 22:1406D(4) provides:

D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
* * * * * *
(4) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.