467 So.2d 569 (1985)
Michael Scott JORDAN
v.
Howard K. SWEENEY, et al.
No. CA 83 1287.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
Rehearing Denied April 12, 1985.
Writ Denied May 31, 1985.
*571 Walter R. Krousel, Jr., Steve Marks, Baton Rouge, for plaintiff-appellant.
Ben Louis Day, Roger Fritchie and Ben Lightfoot, Horace C. Lane, Kenneth Barnette and James Morgan, Baton Rouge, for defendants-appellees.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
This is a suit for damages stemming from personal injuries.
Presented on appeal is the primary issue of whether or not the claimant, who settled with the tortfeasor, renounced his rights against the uninsured motorist (UM) carrier because he failed to expressly reserve them. Recent jurisprudential development[1] has resolved this issue adverse to the UM insurer, requiring us to reverse the trial court and to consider the subsidiary issues of medical payments and quantum.
On May 3, 1980 the plaintiff, Michael Scott Jordan, 17 year old son of Norman Jordan, was the guest passenger in an automobile driven by Jeffrey Cole, son of Leonard Cole. An accident, in which plaintiff was injured, was caused by the negligence of Howard K. Sweeney, who was driving an automobile owned by Fred Land. Suit was filed against Sweeney, his insurer (St. Paul), Land, his insurer (Aetna) and the uninsured motorist carrier of Norman Jordan and Leonard Cole, which happened to be State Farm Mutual Automobile Insurance Company in both instances.
Just prior to jury trial, a settlement totaling $177,802.91 was reached with all parties except State Farm and a document was executed releasing those parties. Liability had been previously admitted by all, so the only issue remaining for the jury was damages. State Farm filed the peremptory exception raising the objection of no cause of action. As a basis the objection stated the other parties were released and no reservation of rights was made against State Farm and that, therefore, State Farm, as a solidary obligee, was also released.
The trial court took the exception under advisement. The suit against State Farm proceeded to trial and the jury returned a verdict of $500,000. (The State Farm policy limits are $100,000 each, with $2,000 medical payments under one and $5,000 medical payments under the other.) The court then considered the exception and following the rationale of Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), and applying La.Civ. Code art. 2203 concluded State Farm had been released. The plaintiff appealed and State Farm answered the appeal raising, alternatively, the issue of quantum.

PEREMPTORY EXCEPTION
The trial court held the release of the tortfeasor and other liable parties, without an express reservation of rights against the uninsured motorist carrier, releases the uninsured motorist carrier. Thus, the trial court granted the objection of no cause of action raised by the peremptory exception and dismissed plaintiff's claim.
Initially, we note no evidence may be introduced in support of an objection that the petition fails to state a cause of action. La.Code Civ.P. art. 931. However, evidence may be properly considered by the court in this regard where it is admitted without objection. In such case, the pleadings are considered to have been enlarged. Lemieux v. Prudential Ins. Co., 416 So.2d 1347 (La.App. 1st Cir.1982), writ denied, 420 So.2d 454 (La.1982), reconsideration denied, 421 So.2d 247 (La.1982). Therefore, although the release agreement in this instance would not ordinarily be admissible in the trial on the objection of no cause of action, it was properly considered by the trial court because no timely objection to its admission was made. Bielkiewicz v. Rudisill, 201 So.2d 136, 143 (La.App. 3d Cir.1967); cf. Boudreaux v. Government *572 Employees Ins. Co., 454 So.2d 135, 137 (La.App. 1st Cir.1984).
The trial court submitted a well reasoned opinion on the issue of release. However, subsequent thereto the clarification of this complex area of the law evolved. In Boudreaux, the court held the release of a tort-feasor and his liability insurer did not release the uninsured and underinsured motorist carrier. The court based its decision on the broad policy in favor of uninsured motorist coverage embodied in La.R.S. 22:1406 D(4) as noted in the case of Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979). Soon after, the Louisiana Supreme Court expanded on this holding in Carona v. State Farm Insurance Co., 458 So.2d 1275 (La.1984) by citing criticism of La.Civ.Code art. 2203 and reiterating the policy supporting the enactment of La.R.S. 22:1406(D). Thus, the jurisprudence is abundantly clear State Farm is still subject to any right of recovery the plaintiff may be entitled to in this instance against the uninsured motorist policies.[2] Further, in light of these recent developments, we applaud the foresight of the trial judge in having all evidence presented for the jury's consideration. By so doing he effected judicial economy, an elusive but always desirable goal.

MEDICAL PAYMENTS
The two State Farm insurance policies provide for medical payments in the amount of $5,000 and $2,000 respectively. The plaintiff contends he is entitled to recover these amounts from State Farm as well as the extent of the uninsured motorist insurance in view of the $500,000 verdict and prior settlement totaling only $177,802.91.
In Bunch v. Frezier, 239 So.2d 680 (La. App. 1st Cir.1970) the court held no deduction for medical payments can be made from the sum paid under the uninsured motorist clause where the general award left to be paid by uninsured coverage exceeded its extent of $5,000 and the medical payments exceeded their limit of $500. Further, in Taylor v. State Farm Mutual Automobile Ins. Co., 237 So.2d 690, 693 (La.App. 4th Cir.1970), the court states,
"... in a case such as Mr. Taylor's where the award for general damages exceeds the policy limits on Uninsured Motorist Coverage, the insurance company must pay its insured the full limits of the policy, in this case $5,000 regardless of what it has paid him under the Medical Payments Coverage."
Accord, White v. Patterson, 409 So.2d 290 (La.App. 1st Cir.1981), writ denied, 412 So.2d 1110 (La.1982), where the First Circuit chose to follow the rule in Taylor. Therefore, because the amount to be paid exceeds the uninsured motorist coverage by $122,197.09 ($500,000 verdict minus $177,802.91 settlement minus $200,000 uninsured motorist coverage) and the medical expenses far exceed $7,000, State Farm is liable to provide medical payments to the extent of the $7,000.[3]

QUANTUM
State Farm contends the jury erred by awarding the sum of $500,000 in total damages. The focus of our inquiry into this specification must be directed at whether or not the trier of fact clearly abused its "much discretion" in the award of damages. Reck v. Stevens, 373 So.2d 498 (La.1979). Absent an initial determination of such an abuse a reviewing court shall not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979). Although we consider the award of $500,000 to be somewhat generous, we do not find it to be so excessive, where evidence of brain *573 damage has been elicited at trial, as to justify the substitution of our judgment for that of the jury in this instance. Cf. Copeland v. La. Dept. of Transp. & Develop., 428 So.2d 1251 (La.App. 3d Cir.1983), writ denied, 435 So.2d 448 (La.1983). Therefore, no reduction will be ordered.
The jury in this instance may reasonably have believed the plaintiff suffered a modicum of brain damage as a result of the car accident which caused a basalar skull fracture. On referral, a neuropsychological examination was administered by Dr. Carey Rostow. Dr. Rostow's credentials are impressive. The Halstead-Reitan Neuropsychological Test Battery was administered to demonstrate organic brain damage at the microscopic level. A brain impairment index of .43 on a scale of 0 to 1.0 was found. This indicates a level of mild to moderate brain damage. Damage was found primarily in the right temporal lobe with additional damage found in the frontal and parietal lobes. These findings are consistent with the mechanics of the accident. Dr. Rostow testified simulation of the cluster of symptoms necessary to indicate organicity (brain damage) in a particular lobe of the brain would require immense sophistication.
According to Dr. Rostow, organic brain damage of the kind found in plaintiff would result in impairment to the emotions, hearing and auditory processing, motor coordination, short-term memory and produce difficulties in interpersonal relationships, hostility, aggression and paranoia. Significant decreases in the employment possibilities and social relationships available to this young man are the forseeable result of this brain damage.
Further, the plaintiff is suffering from a condition termed "tinnitus." Tinnitus is an internal noise caused by damage to the temporal lobe or temporal bone. It is a consequence of the basalar skull fracture which plaintiff sustained. The symptoms of tinnitus are equivalent to a chronic intractable pain. The condition results in problems such as sleeplessness, loss of concentration and irritability. In addition, plaintiff suffered 16 inches of deep facial lacerations resulting in permanent scarring.
We find no abuse of the jury's "much discretion" in its award of $500,000.
The trial court's judgment sustaining the peremptory exception is reversed. The jury verdict in favor of plaintiff for the sum of $500,000 is reinstated. We now render judgment in favor of plaintiff, Michael Scott Jordan, and against defendant, State Farm Mutual Automobile Insurance Company, for the sum of $207,000 (the limits of the UM and medical coverages combined), plus legal interest thereon from date of judicial demand, until paid, and for all costs of court at both the trial and appellate levels.
REVERSED, JURY VERDICT REINSTATED, JUDGMENT RENDERED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In this application for rehearing defendant, State Farm Mutual Automobile Insurance Company, contends it should be allowed a credit for the virile share of two solidarily liable tortfeasors (and their insurers) released by plaintiff. Even though the UM insurer and the tortfeasors are solidary obligors, this fact alone is not determinative of the rights and obligations between them. Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 580 (La. 1982). We conclude allowing such a credit would frustrate the clear legislative aim of the UM statute to promote full recovery by the victim. See Carona v. State Farm Ins. Co., 458 So.2d 1275 (La.1984), which held the release of a tortfeasor without an express reservation of rights against the UM insurer does not release the latter, even though they are solidary obligors. In discussing the UM statute, the Supreme Court stated in Carona, at p. 1279:
"... when the UM insurer pays part of the damages to which the insured is entitled from a tortfeasor and receives a release from the insured, the insured is nevertheless entitled to exercise his right *574 for the balance of the partially paid claim in preference to the insurer, even though the insurer and the tortfeasor are solidary obligors. See Bond [v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981)], supra; Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981). These statutory provisions clearly imply that the insured's right to recover from the UM insurer is afforded similar protection when he first receives payment for part of his damages from the tortfeasor. Any other interpretation would be unreasonable and would cause injuries of innocent, insured motorists to go unremedied, thus frustrating the legislative aim of the UM statute." (Emphasis added.)
For these reasons, we find no merit in State Farm's contention relative to a virile share credit. We likewise find no merit in the other contentions raised by State Farm in this application.
APPLICATION FOR REHEARING DENIED.
LANIER, Judge.
Prior to January 1, 1985, the liability of solidary obligors between themselves was controlled by La.C.C. art. 2103.[1] Where the obligation arose from a contract, each debtor was liable for his virile share; if the obligation arose from a tort, each debtor was liable for his proportionate share of the fault. In the instant case, it was stipulated Land and Sweeney were liable in tort to Jordan. (The first party coverage insurers of Land and Sweeney are contractually liable to them up to the limits of their coverage.) State Farm is liable in contract to Jordan for the uninsured portion of his damages up to the limits of coverage. (Thus, although the first party coverage insurers and State Farm are liable for repairing portions of the tort damage, they are not liable for the same portions.) For the portion of the tort damage for which Land, Sweeney and State Farm are liable, the obligation is solidary. Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982). However, because the obligations of Land and Sweeney are in tort, and that of State Farm is in contract, the consequences of the solidarity are different. Land and Sweeney are liable to Jordan for the whole, but may only recover from each other the other's proportionate share as contribution. Land and Sweeney may not recover from State Farm if they pay the obligation. State Farm is also liable to Jordan for the whole of its limits of liability, but it can recover the whole amount back from Land and Sweeney in accordance with La.R.S. 22:1406(D)(4) and/or any conventional subrogation given to it by Jordan. Fertitta v. Allstate Insurance Company, 462 So.2d 159 (La.1985); Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981). Thus, between the two tortfeasors there are two "virile" portions. The independent contractual obligation of State Farm does not create another virile portion because State Farm can collect all of the obligation back from the tortfeasors, but the tortfeasors may not collect anything back from State Farm.
NOTES
[1] In addition, the express reservation requirement of La.Civ.Code art. 2203 has been abolished by the legislature. See 1984 La.Acts, No. 331.
[2] It is the amount of the policy limits, rather than the actual amount received by plaintiff in settlement, which is relevant in determining what amount, if any, the uninsured motorist carrier is obligated to pay. White v. Patterson, 409 So.2d 290, 292 n. 3 (La.App. 1st Cir.1981), writ denied, 412 So.2d 1110 (La.1982). In the present instance the limits of the Aetna policy were $25,000 and the St. Paul policy limits were $100,000.
[3] The medical subrogation claim of State Farm was dismissed by separate judgment and not appealed by State Farm.
[1] This subject is now controlled by La.C.C. art. 1804.