FOIL, Judge.
At issue in this appeal is whether an uninsured motorist carrier may recover the full amount of what it has paid to its insured’s beneficiaries from a non-motorist tortfeasor found to be 15% at fault. The trial court allowed the uninsured motorist full reimbursement on its cross claim. We affirm.
FACTS AND PROCEDURAL BACKGROUND
The facts forming the basis for this appeal are not in dispute. On July 23, 1987, Bruno Egros was driving his vehicle on Highway 73 in Ascension Parish when he collided with an 18-wheeler which was blocking traffic on the highway. The 18-wheeler, driven by Johnnie Pempton and owned by K & K Trucking, was being used to deliver a load of lumber to Orona Cabinet and Millwork Company (Orona). John McAndrew was assisting Pempton as he attempted to back into Orona’s driveway to complete the delivery. Pempton backed the trailer of the vehicle across Highway 73 and, while it was completely blocking the highway, Egros, travelling at 45 m.p.h., slammed into it. Mr. Egros died 11 days later from injuries sustained in the collision.
Nannette Egros and her children brought these wrongful death and survival actions against a number of defendants, including: Johnnie Pempton and K & K Trucking Company, and their insurer, Royal Insurance Company; Orona and its insurer, Assurance Company of America; and State Farm, the Egros’ uninsured motorist carrier. State Farm filed a cross claim against defendants Pempton, K & K Trucking, Oro-na and Assurance, seeking to recover from them all sums it would be required to pay plaintiffs under its uninsured motorist coverage.
Prior to trial, plaintiffs settled with Royal Insurance Company for $735,000.00 and released it, along with its insureds, Pemp-ton and K & K Trucking, from the lawsuit. Trial proceeded against Orona, Assurance and State Farm. The jury ruled in favor of plaintiffs, awarding them $2,362,518.80 and allocating fault for the death in the following manner: Johnnie Pempton and K & K Trucking — 55%; John McAndrew — 15%; Órona — 15%; and Bruno Egros — 15%. The trial judge reduced the amount of damages recoverable by 70%, the percentage of fault attributed to the released solidary obligors and to Bruno Egros, entering judgment in favor of plaintiffs for $903,663.00. The trial court cast Orona, Assurance and State Farm liable in solido on the judgment, subject to Assurance’s policy limits of $500,-000.00 and State Farm’s $100,000.00 policy limits. Additionally, the trial court entered judgment in favor of State Farm on its cross claim against Orona and Assurance, granting to State Farm’s insured’s beneficiaries a preference over their insurer to recover the full amount of their damages.
Following the judgment, State Farm deposited its policy limits plus interest into the registry of the court; plaintiffs withdrew the proceeds and executed a satisfaction of the judgment in favor of State *1141 Farm. Plaintiffs also settled with Orona and Assurance, executing a satisfaction of the judgment in their favor. Orona and Assurance brought this appeal, challenging the action of the trial court in granting State Farm’s cross claim against them.
DISCUSSION
Orona and Assurance’s first assignment of error urges that there should be judgment in their favor on the cross claim because the trial court’s judgment does not state a specific sum owed on the claim and State Farm did not seek a clarification of the judgment or answer this appeal. Our reading of the trial court’s written reasons for judgment convinces us that the trial court intended that State Farm be paid on its cross claim the full amount of what it paid its insured’s beneficiaries, $117,543.15, which represents the full policy limits plus interest deposited by it into the registry of the court. The amount of the judgment is easily ascertainable from the record before us and for the purposes of this appeal, we conclude the trial court awarded iptate Farm the entirety of what it paid on the plaintiffs’ UM claims.
Orona and Assurance contend that the trial court erred in awarding State Farm the full amount of what it paid, arguing first that such an award constitutes impermissible indemnification because its insured, Bruno Egros, was found to be at fault. They then argue that State Farm could not be awarded the full amount on the basis of contribution because State Farm did not pay the entire amount of the judgment. These characterizations are misplaced. -State Farm’s right to recover what it has paid its insured is not grounded in indemnification or contribution, but rather is based on subrogation embodied in La.R.S. 22:1406(D)(4), which provides, in pertinent part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(4) In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
This provision has been interpreted by our Supreme Court as embodying the principle of subrogation. Bosch v. Cummings, 520 So.2d 721 (La.1988). The Court has declined to read the provision expansively so as to grant the UM carrier an independent right of action against an uninsured motorist. Hebert v. Green, 311 So.2d 223, 228 (La.1975). It has made it clear that beyond the right to reimbursement, the statute does not even attempt to delineate the insurer-insured-tortfeasor relationship. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981). Instead, the Court has construed La.R.S. 22:1406(D)(4) to grant to the UM carrier those rights afforded by the general civil code provisions governing subrogation. Bosch v. Cummings, 520 So.2d at 723. In Bosch, the Court explained that it has construed the provision narrowly to prohibit a UM carrier from attempting to limit, frustrate or interfere with the insured’s right to pursue the fullest possible recovery and defeat the very purpose behind the uninsured motorist statute, that is, full reparation for all damages suffered by the innocent victims of uninsured or underinsured motorists. The UM carrier’s subrogation rights were delineated as follows:
However, when the uninsured motorist insurer makes payment under its policy to its insured the carrier may become subrogated, under the general civil code articles on subrogation, in the measure of what it has paid, to the insured’s right against the tortfeasor and his insurer, because this construction of the statute best conforms to the purpo&e of the law_ Under these precepts, the uninsured motorist carrier who pays all of its insured’s damages is completely subro-gated to his claim against the uninsured *1142 or underinsured tortfeasor, but when he pays for only part of the damages sustained, the insurer receives a partial, subordinate subrogation_ Because sub-rogation is a means of transferring an obligation under which one person is substituted to the rights of another, the uninsured motorist carrier by subrogation may acquire only whatever rights its insured has against the underinsured motorist or his insurer.
Bosch v. Cummings, 520 So.2d at 723-234. (Citations omitted)
Recognizing that State Farm is exercising its right of subrogation against Orona and Assurance, we now address the latter’s argument that a UM carrier should not be entitled to full reimbursement against a non-motorist tortfeasor found to be only 15% at fault. Orona and Assurance contend that State Farm was called upon to pay plaintiffs because the only motorist in this case, found to be 55% at fault, did not have adequate insurance. They point to the recent case of American States Insurance Company v. Roark, 583 So.2d 570 (La.App. 3d Cir.1991), in which the court held that a UM carrier does not have a cause of action under La.R.S. 22:1406(D)(4) to seek reimbursement from the proceeds received from a settlement by the insured with the tortfeasor’s homeowner’s insurer. The court construed La. R.S. 22:1406(D)(4) to allow a UM carrier to demand reimbursement only when the insured receives money from the uninsured tortfeasor and the uninsured tortfeasor’s insurer. In reaching that decision, the court relied on a passage from the case of Neimann v. Travelers Ins. Co., 368 So.2d 1003, 1007-1008 (La.1979), wherein the Supreme Court stated that the UM carrier has no right under La.R.S. 22:1406(D)(4) other than the right to reimbursement from the proceeds, if any, that the insured in fact recovers from the underinsured tortfeasor.
We do not read the language of La.R.S. 22:1406(D)(4) so narrowly. It clearly grants to the UM insurer the right to recover proceeds of any settlement or judgment resulting from the exercise of the rights of its insured against any person or organization legally responsible for the bodily injury for which such payment is made. The legislature did not limit the UM carriers’ right of reimbursement to proceeds received from the uninsured motorist and his insurer, but instead granted that right when the UM insured exercises his rights against any person or organization responsible for the injury requiring the UM carrier to pay. Granting to the UM carrier the right to exercise, through the principles of subrogation, the rights its insured could assert against a non-motorist tortfeasor responsible for the injury does not frustrate the purpose behind the uninsured motorist statute. Instead, it promotes the goal of prompt settlement of claims by the UM insurer with its insured, since the UM carrier is able to seek reimbursement for the sum it pays to its insured from those legally responsible for causing its insured’s losses.
Having concluded that State Farm may seek reimbursement for the amount it paid its insured from a non-motorist tort-feasor, we turn to Orona and Assurance’s arguments which seek to limit the amount recoverable by State Farm. First, they correctly point out that as to the obligation owed the plaintiff, our courts have consistently held that a UM carrier and the tort-feasor (or tortfeasors) are solidary obligors. Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La. 1982); Fertitta v. Allstate Insurance Company, 462 So.2d 159 (La.1985); Rutkowski v. State of Louisiana, 550 So.2d 257 (La.App. 4th Cir.1989) (holding that uninsured motorist, non-motorist tortfeasor and the UM carrier are solidary obligors on the amount owed the plaintiff.) Orona and Assurance argue that because they are liable in solido with State Farm on the debt owed the Egros beneficiaries, State Farm cannot recover more than Orona’s virile portion under La.Civ.Code art. 1804, which provides:
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of *1143 agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.
A solidary obligor who has rendered the whole performance, though subrogat-ed to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.
While recognizing that the UM carrier and tortfeasors are solidary obligors on the debt owed to the plaintiff, the jurisprudence has also recognized that the rights of the carrier and the tortfeasors, as between themselves, may be governed by different principles. Babineaux v. Domingue, 529 So.2d 45 (La.App. 3d Cir.1988) (Stoker, J., concurring). In Jordan v. Sweeney, 467 So.2d 569, 574 (La.App. 1st Cir.), writ denied, 469 So.2d 985 (La.1985), it was recognized that although a tortfeasor and UM carrier are solidary obligors on the debt owed to the plaintiff, the consequences of solidarity are different because the obligations of the tortfeasor are based in tort and the obligations of the UM carrier arise in contract. It was noted that while the UM carrier and tortfeasors are liable for the whole debt to the plaintiff, as between themselves, the tortfeasors could recover from each other the other’s proportionate share as contribution. However, the tort-feasors could not recover from the UM carrier if they pay the obligation. While the UM carrier was likewise liable to the plaintiff for the whole of the debt up to the limits of its policy, it could recover the whole amount back from the tortfeasors under La.R.S. 22:1406(D)(4) and or any conventional subrogation given to it by the plaintiff. One writer in Jordan stated: “Thus, between the two tortfeasors there are two ‘virile’ portions. The independent contractual obligation of State Farm [the UM carrier] does not create another virile portion because State Farm can collect all of the obligation back from the tortfeasors, but the tortfeasors may not collect anything back from State Farm.” Id. at 574.
In this case, State Farm is exercising the rights the plaintiffs have against the remaining tortfeasor, Orona and its insurer. Subrogation is a legal fiction in which the subrogee steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor. Smith v. Manville Forest Products Corporation, 521 So.2d 772 (La. App.2d Cir.), writ denied, 522 So.2d 570 (La.1988). The primary object of subrogation is reimbursement to the subrogee for payments made by it. Here, Orona is liable in solido on the plaintiff’s claim; the plaintiff had the right to collect the full amount of the debt from Orona. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). State Farm, standing in plaintiff’s shoes, is entitled to recover the full amount of what it has paid from Orona.[1] Application of the laws on solidary obligations would conflict with State Farm’s subrogation rights under La. R.S. 22:1406(D)(4). The laws governing solidary obligors are superseded by La.R.S. 22:1406(D)(4) to the extent they conflict therewith. Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984). Accordingly, we conclude that State Farm is not limited to recovering Orona’s “virile portion” on its cross claim.[2]
*1144 Finally, Orona and Assurance contend that State Farm should not be entitled to recover 15% of the amount it paid, which represents the percentage of fault attributed to its insured, Bruno Egros. Mr. Eg-ros’ fault was considered by the trial court in reducing the amount owed on the judgment in accordance with his percentage of fault. State Farm, Orona and Assurance were cast liable in solido on the amount remaining after subtraction of the percentage of fault attributed to both the released tortfeasors and Mr. Egros. We find Theriot v. Bergeron, 552 So.2d 1 (La.App. 1st Cir.1989), relied upon by Orona and Assurance in an attempt to limit the amount State Farm may recover, inapplicable. That case involved a cross claim by a UM insurer against two tortfeasors for medical payments it made to the plaintiff. This court concluded that the insurance carrier’s right to recover medical payments against the tortfeasors was limited to each tort-feasor’s proportionate share of the damages because the plaintiff could recover from each tortfeasor no more than the percentage of fault attributable to that tort-feasor. Theriot v. Bergeron has been implicitly overruled by Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991). In any event, we have not uncovered any statutory or jurisprudential authority which would allow a UM carrier to refuse to pay its insured based on the percentage of its insured’s fault, where the insured’s fault has been considered in reducing the amount of the judgment. We decline to apply such a rule in this case.
CONCLUSION
Based on the foregoing, we conclude that State Farm, as the uninsured motorist carrier of Bruno Egros, is entitled to exercise its subrogation rights against a non-motorist tortfeasor and its insurer for the full amount of what it has paid its insured’s beneficiaries. This ruling does no injustice to the premise behind the UM law to insure full recovery by the innocent victims of uninsured motorists and encourages prompt payment by the UM carrier to its insureds. Accordingly, the judgment of the lower court is affirmed. All costs of this appeal are assessed to Orona Cabinet and Millwork Company and Assurance Company of America.
AFFIRMED.
CARTER, J., concurs in the result.

. The legislature amended La.C.C. Art. 2324, effective September 1, 1987, to change the law regarding the liability of joint tortfeasors to the plaintiff. This amendment provides, with several exceptions, that the liability of joint tort-feasors is solidary only to the extent of 50% of the judgment. Further, where a plaintiff is found to be more at fault than one of the joint tortfeasors, the plaintiff’s recovery against that tortfeasor is limited to its proportionate share. This amendment is substantive and may not be applied retroactively. Morrison v. J.A. Jones Construction Company, Inc., 537 So.2d 360 (La. App. 4th Cir. 1988). Because the accident sued upon occurred before the effective date of this amendment, we need not consider its impact on the UM carrier’s reimbursement claim at issue before us.

. Just as a plaintiff may recover the whole of the debt from any one of several solidary obli-gors, so too may the UM carrier on its subrogation claim. On a UM carrier's reimbursement claim, those parties who are legally responsible *1144 tor the accident are solidary obligors, and the UM carrier is entitled to recover the whole from any one of them. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991).
The solidary obligors on the reimbursement claim, as between themselves, have the right of contribution under La.Civ.Code art. 1804.