606 So.2d 780 (1992)
Nanette Hatten EGROS
v.
Johnnie E. PEMPTON, et al.
Jacqueline C. MAXWELL
v.
Johnnie E. PEMPTON, et al.
No. 92-C-0306.
Supreme Court of Louisiana.
October 19, 1992.
*782 John L. Dardenne, Jr., Kennon, White, Odom & Dardenne, for applicant.
Michael P. Covin, Ward & Clesi, Vincent J. Sotile, Jr., Talbot, Sotile, Carmouche, Marchand & Marcello, Allen Morris Edwards, Kevin Patrick Monohan, James P. Doré, Barron, Delahaye, Edwards & Doré, William J. Staser, for respondents.
John deGravelles, deGravelles, Palmintier & Holthaus, Robert Elton Kleinpeter, for Louisiana Trial Lawyers Ass'n, amicus curiae.
COLE, Justice.
This case presents the issue of whether an uninsured/underinsured motorist (UM) insurer may recover in subrogation the damages paid to its insured from a non-motorist joint tortfeasor; and if so, to what extent the UM insurer should recover when the non-motorist is only partially at fault. Considering the language of LSA-R.S. 22:1406(D)(4) and the public policy which supports the statute, we conclude that in this case the UM insurer may recover in subrogation payments made to its insured up to the amount that the UM insurer has paid.

FACTS
The facts of the case are not seriously disputed. At approximately 12:30 a.m. on July 23, 1987, Bruno Egros was driving his vehicle on Highway 73 in Ascension Parish when he collided with an 18-wheeler. The 18-wheeler, driven by Johnnie Pempton and owned by K & K Trucking, was blocking both lanes of traffic in an attempt to maneuver down a driveway to deliver a load of lumber to Orona Cabinet and Millwork Company (Orona). John McAndrew, the broker who had arranged the sale, was assisting Pempton in his attempt to back into Orona's driveway. Egros, traveling at approximately 50 m.p.h., slammed into the trailer. Egros died on August 4, 1987 from injuries sustained in the accident.
Nannette Egros, wife of Bruno Egros, filed a petition asserting wrongful death and survival actions in her individual capacity, as administratrix of her husband's estate, and on behalf of her minor child. Named defendants were Johnnie Pempton; K & K Trucking and its insurer, Royal Insurance Company; Orona and its insurer, Assurance Company of America (Assurance); and State Farm, the Egros' UM insurer. Bruno Egros' two major children, Jamie Egros Hughes and Bruno Joseph Egros III, filed their own petition for damages against these defendants.[1] State Farm filed a cross-claim against Pempton, K & K Trucking, Orona, and Assurance, seeking to recover from them all sums it might be required to pay under its uninsured/underinsured motorist coverage.
Prior to trial, the plaintiffs settled their claims with Royal Insurance Company and released it, along with its insureds, Pempton and K & K Trucking. Trial proceeded against the remaining defendants, Orona, Assurance, and State Farm.
The jury returned a verdict in favor of the plaintiffs, awarding them $2,362,520, and allocating fault for the death of Bruno Egros as follows:

Pempton and K & K Trucking 55%
Orona 15%
Bruno Egros 15%
John McAndrew 15%
 ____
 100%

The trial court reduced the amount of damages recoverable by 70%, the percentage of fault attributed to the released tortfeasors plus the fault attributed to Bruno Egros, and entered judgment for the plaintiffs for *783 $903,663.[2] The trial court cast Orona, Assurance, and State Farm in solido for the judgment, subject to the two insurers' policy limits of $500,000 (Assurance) and $100,000 (State Farm). In addition, the trial court entered judgment in favor of State Farm on its cross claim against Orona and Assurance; and provided that the plaintiffs, as insureds, had a preference over their insurer to recover the full amount of their damages.
State Farm deposited its policy limits plus interest into the registry of the court. The plaintiffs withdrew the funds and executed a satisfaction of judgment in favor of State Farm.[3] Orona and Assurance sought a new trial on the cross-claim. After the trial court denied their motion, Orona and Assurance appealed. The court of appeal affirmed[4] and Orona and Assurance filed writs to this court.[5]

DISCUSSION

a. Limits of Subrogation Rights

The objective of Louisiana's uninsured/underinsured motorist law, LSA-R.S. 22:1406(D), is to promote full recovery for damages sustained by automobile accident victims by making UM insurance available to the insured whenever a tortfeasor has no insurance or has insufficient insurance to adequately compensate for damages. Bosch v. Cummings, 520 So.2d 721, 723 (La.1988); Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982); Bond v. Commercial Union Assur. Co., 407 So.2d 401, 409-10 (La.1981). This statutory scheme ensures that tortfeasors are ultimately held responsible for their delicts and encourages motorists to maintain adequate liability coverage. Bond, 407 So.2d at 411. To effectuate this goal, the legislature granted UM insurers the right
to receive ("be entitled to") the proceeds of any settlement or judgment which has resulted or might result ("resulting") from the exercise of the insured's rights against the uninsured tortfeasor (and by implication the underinsured tortfeasor).
Niemann v. Travelers Ins. Co., 368 So.2d 1003, 1007 (La.1979).
LSA-R.S. 22:1406(D)(4) provides:
In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting *784 from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
Although originally interpreted by this court as a right only of reimbursement, see Niemann, 368 So.2d at 1006, the court later reasoned that a UM insurer, upon payment to its insured, becomes conventionally subrogated to its insured's right against the uninsured or underinsured tortfeasor. See Bond, 407 So.2d at 408. "[T]his construction of the statute best conforms to the purpose of the law." Bosch, 520 So.2d at 723.
"Subrogation is the substitution of one person to the rights of another." LSA-C.C. art. 1825; see Bond, 407 So.2d at 408. "Conventional subrogation occurs when the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor." Bond, 407 So.2d at 409.
The UM insurer has no greater rights in subrogation than those of its insured. Bond, 407 So.2d at 410. If the UM insurer pays the whole obligation, it is completely subrogated to the insured's rights against the tortfeasor. If the UM insurer pays only part of the obligation, such as when it pays to its policy limits which are less than the total amount of damages, it is partially subrogated to the insured's rights. Bosch, 520 So.2d at 723; Bond, 407 So.2d at 411. If partial subrogation occurs, the insured is paid in preference to the UM insurer's right to reimbursement through subrogation, to ensure full recovery for the accident victim.[6]Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224, 227 (La. 1982); Bond, 407 So.2d at 408 n. 1; LSA-C.C. art. 1826.
Orona and Assurance argue that the UM insurer in this case, State Farm, is not entitled to subrogation against a non-motorist joint tortfeasor. They argue that the statute should be narrowly construed to allow subrogation only when motorist tortfeasors and their insurers are involved, relying on American States Ins. Co. v. Roark, 583 So.2d 570, 572-73 (La.App. 3d Cir.), writ denied, 586 So.2d 560 (1991). In Roark, the UM insurer brought suit against the insured to recover its payment from proceeds the insured had received from a non-motorist source (a third party homeowner's policy) in settlement. The third circuit reasoned that the proceeds which the insured received from the homeowner's policy had no connexity with the payments made by the UM insurer. The court of appeal held that LSA-R.S. 22:1406(D)(4) permitted reimbursement "only when the insured received money from the UM tortfeasor and a UM carrier." Id., 583 So.2d at 572.
Orona and Assurance argue that the reasoning of Roark should apply in this case. There is, however, an important distinction between this case and Roark. In Roark, the UM insurer brought suit against the insured. Although there was no judicial determination of the measure of damages which would have made the insured whole, because the plaintiff-insured received these funds in settlement, a judgment allowing reimbursement for the UM insurer would have reduced the recovery of the insured by $26,000. This result is not consistent with the objective of the UM statute, which seeks full recovery for insureds.[7]
*785 The reasoning in Roark conflicts with the first circuit opinion in this case and the fourth circuit's opinion in Rutkowski v. State, 550 So.2d 257 (La.App. 4th Cir.1989). In Rutkowski, the UM insurer filed a third-party demand against an engineering consultant partnership responsible for the design of a bridge on which the insured sustained damages resulting in her death. The fourth circuit found the UM insurer, the uninsured motorist tortfeasor, and the non-motorist tortfeasor to be bound in solido for the full amount of damages sustained by the insured as the result of the concurrent fault of the two joint tortfeasors. Relying on the legislative aim of the UM statute, the appellate court held that the UM insurer could assert subrogation rights against the non-motorist joint tortfeasor for damages it had paid to its insured. Rutkowski, 550 So.2d at 259-60.
The appellate court in the instant case also refused to read the language of the UM statute narrowly. In affirming the trial court's judgment, the First Circuit held that the statute did not limit the UM insurer's subrogation rights to the uninsured motorist tortfeasor or to the underinsured motorist tortfeasor and his insurer, but instead granted that right whenever the insured exercised his rights against any person or organization responsible for his injuries. Egros, 588 So.2d at 1142.
The unambiguous language of the UM statute provides that whenever a UM insurer makes payment to an insured for bodily injuries, the insurer is entitled to recover against "any person or organization legally responsible for the bodily injury for which such payment is made." LSA-R.S. 22:1406(D)(4). We hold this language is broad enough to encompass the subrogation right of a UM insurer against a non-motorist joint tortfeasor. LSA-C.C. art. 9.[8] We find that the reasoning of the first and fourth circuits, which allows a UM insurer to exercise its subrogation rights against a non-motorist joint tortfeasor, is consistent with the legislative goal of the UM statute to allow automobile accident victims full recovery. The legislature could have limited the wording of the statute to make clear that recovery for UM insurers could be had only against uninsured motorists and underinsured motorists and their insurers, but did not. A UM insurer does not differentiate when making payment to its insured between bodily injuries caused by jointly liable motorist tortfeasors and non-motorist tortfeasors. Where these two types of tortfeasors are jointly liable for bodily injuries of a person covered by a UM policy, there is no need to distinguish between the two in granting the UM insurer its subrogation rights.

b. Effects of Solidary Liability

The trial court cast Orona, its insurer, Assurance, and State Farm liable in solido for the plaintiffs' damages. Thus, they are obliged to do the same thing, that is, to facilitate the recovery of the insured victim. Hoefly, 418 So.2d at 578. Although the obligations of the tortfeasor and UM insurer arise from different sources, the obligation may be in solido as to the insured. Fertitta v. Allstate Ins. Co., 462 So.2d 159, 163 (La.1985); Hoefly, 418 So.2d at 579; Johnson, 425 So.2d at 227-28; LSA-C.C. art. 1797. Orona is fully bound due to its delict and its insurer is bound up to the amount of its policy limits. Carona v. State Farm Ins. Co., 458 So.2d 1275, 1279 (asterisk fn.) (La.1984); Hoefly, 418 So.2d at 579; LSA-C.C. art. 1798. State Farm is conditionally bound, as its obligation is conditioned on a tortfeasor's total or partial lack of liability insurance, the type of damage caused, and the policy limitations allowed by law. Hoefly, 418 So.2d at 579. Being solidary obligors to the plaintiff, however, does not mean that all the consequences of solidarity attach to the relationship between the tortfeasor and *786 the UM insurer. Solidary obligors, "although solidarily bound for the creditor's benefit, may have differing relationships among themselves." Hoefly, 418 So.2d at 580. In other words, the consequences of their solidarity are different. Jordan v. Sweeney, 467 So.2d 569, 574 (La.App. 1st Cir.) (Lanier, J. concurring in denial of rehearing); writ denied, 469 So.2d 985 (1985).
These different consequences surface in the context of State Farm's cross-claim against Orona and Assurance. While it is true that State Farm has a right to reimbursement through subrogation for recovery from the tortfeasor, Orona, it will have no further rights against Orona's insurer, Assurance, once Assurance pays its policy limits to the plaintiffs, since the plaintiffs were granted a preference over their insurer to recover the full amount of their damages. In other words, Orona is a solidary obligor with Assurance for Assurance's policy limits of $500,000. Carona, 458 So.2d at 1279 (asterisk fn.); LSA-C.C. art. 1798. State Farm is solidarily liable with them up to its policy limits of $100,000. Orona is then solidarily obligated for any amount of damages over these policy limits.
In its cross-claim, State Farm is exercising through subrogation the rights the plaintiffs would have against the remaining tortfeasor, Orona.[9] The plaintiffs could have sought recovery for the entire debt from Orona.[10]Fertitta, 462 So.2d at 163; LSA-C.C. arts. 1794, 1795. State Farm, standing in the shoes of its insured, is entitled to recover from Orona the payment it made to its insured. When the UM insurer makes payment, it becomes subrogated "in the measure of what it has paid" to the insured's right of action against the tortfeasor. Bosch, 520 So.2d at 722. Thus, State Farm is entitled to recover the full measure of what it has paid from the remaining solidary tortfeasor, Orona. This result conforms with the UM statute's objective of making tortfeasors ultimately responsible for their delicts. Bond, 407 So.2d at 411.
Orona and Assurance argue that the trial court erred in awarding State Farm the full amount of what it paid, asserting that the award constitutes impermissible indemnification since State Farm's insured, Egros, was found to be 15% at fault. Alternatively, they argue that principles of contribution should operate to reduce State Farm's recovery. As found by the court of appeal, reliance on either of these concepts is misplaced. Egros, 588 So.2d at 1141. "Indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to one primarily responsible for the act or cause of the damage," while "[c]ontribution apportions the loss among joint tortfeasors and requires each to pay his virile share of the damages that result from the wrong." Green v. TACA International Airlines, 304 So.2d 357, 359 (La.1974). State Farm's right to reimbursement does not arise from indemnification, but from the conventional subrogation provided in LSA-R.S. 22:1406(D)(4). The concept of contribution does not operate here because the reciprocity among obligors necessary to its operation is lacking. See Jordan, 467 So.2d at 574 ("The independent contractual obligation of [the UM insurer] does not create another virile portion because [the UM insurer] can collect all of the obligation back *787 from the tortfeasors, but the tortfeasors may not collect anything back from [the UM insurer].") (emphasis in original); compare LSA-C.C. arts. 1804, 1805. Although State Farm is solidarily liable as to the plaintiffs, it can recover any payments from the tortfeasor, based on its right to subrogation found in LSA-R.S. 22:1406(D)(4). By contrast, if Orona and its insurer paid the entire debt, they would have no action against the UM insurer. Id.
Orona and Assurance also claim that the amount of State Farm's recovery should be reduced either by an amount proportionate to the insured's fault or by an amount proportionate to the fault of the motorist tortfeasor. The record shows the judgment was already reduced to reflect the fault of the insured and the motorist tortfeasor. To again take their fault into account would constitute an improper double-counting.

CONCLUSION
For the foregoing reasons, we conclude that the court of appeal's judgment in favor of a UM insurer's right of subrogation against a non-motorist joint tortfeasor is correct and should be affirmed. Further, we hold that in this case the UM insurer may recover in subrogation payments made to its insured up to the amount it has paid.
AFFIRMED.
NOTES
[1] Jacqueline C. Maxwell, a passenger in Egros' vehicle, filed her own petition seeking recovery for damages against Pempton, K & K Trucking, Royal Insurance Co., Orona, Assurance Company of America, and State Farm. The two cases were consolidated. Prior to trial, Maxwell settled her claims against Pempton, K & K Trucking, and Royal Insurance Co. for $14,864. After trial by jury, Maxwell was awarded damages of $5000 against State Farm, Orona, and Assurance, in solido. These damages were further reduced to $2250 after a reduction was made to account for the percentage of fault of the settling tortfeasors. No appeal was taken as to any aspect of Maxwell's case.
[2] We note that the trial court made an error in calculating the amount of damages. The trial judge correctly subtracted the percentage of fault attributed to the plaintiffs' deceased from 100% to obtain 85% of the total judgment. LSA-C.C. Art. 2323. The trial judge then subtracted the percentage of fault of the settling tortfeasors from the 85% remaining. This, in effect, transformed what should have been 55% of the total amount of fault into 55% of 85%. The percentage of fault attributed to the plaintiffs' deceased plus the percentage of fault of the settling tortfeasors should both be subtracted from the total amount of fault. Thus, the 15% fault attributed to Bruno Egros plus the 55% of Pempton and K & K Trucking, should have been subtracted from 100%. Using this method of calculation, the amount of damages remaining equals $708,756.

Although Orona and Assurance urged a modification of the calculation of damages in a motion for new trial, neither party argued the issue to the court of appeal or to this court. At this point in the litigation, it is unnecessary to amend the judgment because the plaintiffs have settled their claim with Orona and Assurance and have received payment from State Farm. The only issue is whether State Farm will recover its policy limits plus interest which it paid to its insured.
[3] The plaintiffs also settled with Orona and Assurance, executing a satisfaction of judgment in their favor. In seeking a rehearing on appeal, Orona and Assurance requested a remand so that the record could be supplemented by evidence showing that Assurance had paid its policy limits to the plaintiffs. In this court, Orona and Assurance urge that the court of appeal's refusal to remand was error. As will be discussed infra, it is unnecessary to remand for this information since Assurance and State Farm were bound in solido only to the limits of their respective policies. Once Assurance pays its policy limits to the insured, State Farm will be unable to assert a claim in subrogation against Assurance.
[4] 588 So.2d 1139 (La.App. 1st Cir.1991).
[5] 595 So.2d 643 (La.1992).
[6] State Farm was partially subrogated to its insured's rights at the time State Farm made payment by depositing its policy limits into the court's registry and by the insured's withdrawal of the funds. Bosch, 520 So.2d at 723. The insured's subsequent settlement of its remaining claim with Orona and Assurance does not affect the rights State Farm received at the time of its payment. This case does not present a situation where the insured settles with a tortfeasor before the UM insurer makes payment. There, the insured has no rights to which the UM insurer may become subrogated. See Bosch, 520 So.2d at 724; Pace v. Cage, 419 So.2d 443, 444 (La. 1982); Serpas v. Ridley, 556 So.2d 134 (La.App. 5th Cir.1990).
[7] The Louisiana Trial Lawyers Association, filing a brief as amicus curiae, argues that this court must agree with the reasoning of Roark because we denied writs with the notation "[r]esult is correct." Roark, 586 So.2d at 560. This supposition is incorrect. This court properly found that the result, which denied the reduction of the insured's recovery for the benefit of the UM insurer, was correct.
[8] LSA-C.C. art. 9 provides:

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
This article, effective January 1, 1988, reproduces the substance of Article 13 of the Louisiana Civil Code of 1870.
[9] It should be remembered that an additional tortfeasor, John McAndrew, was found to be 15% at fault for the accident. McAndrew, however, was not made a party to this suit, leaving Orona the only tortfeasor legally responsible for the judgment.
[10] As noted by the court of appeal, LSA-C.C. art. 2324 was amended effective September 1, 1987 to change the law regarding the liability of joint tortfeasors to the plaintiff. The amendment provides that, except in certain circumstances, the liability of joint tortfeasors is solidary only to the extent of 50% of the damages recoverable by plaintiff. The solidary tortfeasor is liable only to the extent of his degree of fault, however, when the plaintiff has been found to be more at fault. Since the amendment effected a substantive change in the law, it should be applied prospectively only and is not applicable to this case. See Morrison v. J.A. Jones Const. Co., Inc., 537 So.2d 360, 365 (La.App. 4 Cir.1988). Whether this amendment will change the recovery rights of the UM insurer and how it may do so is not presented in the case now before the court.