638 So.2d 275 (1994)
Thelma COLLINS
v.
Ronald ESTRADE, Nora Livingston and Motors Insurance Corporation.
No. 93-CA-977.
Court of Appeal of Louisiana, Fifth Circuit.
May 11, 1994.
Rehearing Denied July 18, 1994.
*276 Robert T. Hughes, New Orleans, for plaintiff-appellee Thelma Collins.
Scott W. McQuaig, W. Chad Stelly, McQuaig & Solomon, Metairie, for defendant-appellant Ronald Estrade.
Before KLIEBERT, BOWES and WICKER, JJ.
BOWES, Judge.
On August 17, 1987, plaintiff, Thelma Collins, filed suit for damages incurred as a result of an automobile accident. Ms. Collins alleged that her vehicle and another automobile were involved in an intersectional collision. Named as defendants were Ronald Estrade, driver of the vehicle; Nora Livingston, owner of the vehicle and Motors Insurance Corporation, who is Ms. Livingston's automobile liability insurer and also Collins' uninsured/underinsured liability insurer.
Sometime thereafter, plaintiff settled with Nora Livingston and Motors Insurance Company for $22,000.00.
On October 4, 1989, more than two years later, plaintiff filed a motion for preliminary default against Estrade which was signed by the trial court. On March 17, 1993, after passage of some three and one-half years, a hearing was had to confirm the default. The trial court rendered judgment in favor of plaintiff for general damages of $50,000.00 and special damages (medical expenses) of $13,488.00. Estrade now appeals. We amend, and as amended, affirm the judgment of the trial court.

*277 ANALYSIS

On appeal, Estrade presents three assignments of error; namely that:
(1) Thelma Collins failed to present a prima facie case;
(2) That plaintiff's actions in confirming a default some six years after filing of suit constituted an "ill practice"; and
(3) The trial court erred in assessing damages as it failed to credit amounts previously paid to plaintiff by other solidary obligors.

1. Prima Facie Case

LSA-C.C.P. art. 1701 A provides that:
A. If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes.
LSA-C.C.P. art. 1702 states in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
* * * * * *
B.(2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
* * * * * *
D. When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.
It is well established that in obtaining a default judgment, the plaintiff must present competent evidence to support each element of his causes as fully as though each of the allegations in his petition were denied by defendant. Hollis v. Norton, 586 So.2d 656 (La.App. 5 Cir.1991).
In reviewing a judgment of default, the appellate court is restricted to a determination of whether the record contains sufficient evidence to support a prima facie case. Foret v. Terrebonne, Ltd., et al., 621 So.2d 855 (La.App. 5 Cir.1993).
In confirming the default judgment, plaintiff presented her own testimony, the sworn deposition of her treating physician, Dr. Watermeier, and the medical bills from St. Charles Hospital and from Metairie Physical Therapy.
The defendant alleges that this evidence is insufficient to present a prima facie case for several reasons. First, he argues that only a "portion" of the deposition was used and this "portion" of deposition of plaintiff's physician is insufficient to comply with LSA-C.C.P. art. 1702(D).
The record before us (which was also available to counsel for appellant) reflects that plaintiff's attorney offered into evidence the complete sworn deposition of the treating physician, Dr. Watermeier in the federal suit, consisting of thirty-eight pages, and certified by the court reporter. This deposition was taken in conjunction with a suit filed in the United States District Court for disability benefits by the same Ms. Collins arising from the same accident and involving the exact same medical treatment as is the basis of this suit.
A reading of defendant's brief leads us to believe that defendant's attorney was under a mistaken impression, or did not adequately or accurately read the record, when he says several times that only a "portion" of the deposition was introduced into evidence and that the deposition was taken in an "unrelated" matter and was "unverified" as these statements are not correct. The record before us reflects unquestionably that the entire deposition, which was taken under oath and was certified by a court reporter, was *278 placed into evidence and is present now in the exhibits filed in this Court. It is difficult to understand how this entire, ample document could have been overlooked or misconstrued.
In addition, the federal court suit was certainly not an "unrelated matter" as it was filed by the identical plaintiff, Ms. Collins, concerning the identical accident and the identical injuries and medical expenses as are the subject of the suit before us.
We are of the opinion, as the trial judge also ruled, and hold that a certified deposition, taken under oath, under the circumstances mentioned above when the doctor was subject to cross examination (and was, in fact, vigorously cross-examined by opposing counsel in the federal suit) is sufficient to constitute a sworn narrative report and to comply with the requirements of LSA-C.C.P. art. 1702 D. In fact, it is much stronger evidence than a narrative report.
It may be argued that the deponent was not subject to cross-examination by opposing counsel in this suit. But, then a narrative report is subject to cross-examination by no oneso this argument has no merit.
Estrade also alleges that Dr. Watermeier's testimony, through his deposition, fails to show a causative link between plaintiff's injuries and the automobile accident.
In his deposition, Dr. Watermeier testified that Ms. Collins suffered from back problems prior to the accident, and had undergone surgery in 1985. Prior to the accident, plaintiff complained of lower back pain. Immediately after the accident, plaintiff was admitted into the hospital and she was hospitalized for almost two weeks. During hospitalization, plaintiff received morphine injections for her severe pain. Tests run during this hospitalization revealed, among other things, a ruptured disc and/or nerve impingement at the L5-S1 vertebrae. Plaintiff had continued under treatment for two and one-half years when it was suggested that she undergo additional testing and further surgery. Finally, Dr. Watermeier stated in his deposition that he felt this accident aggravated her previous condition.
In addition, plaintiff testified that she was admitted to the hospital immediately after the accident, where she remained for eleven days. To date, she remains under a doctor's care for the results of these injuries.
Next, defendant alleges that Ms. Collins failed to lay a proper foundation to allow the trial court to accept into evidence the medical bills from St. Charles Hospital and/or Metairie Physical Therapy.
However, these medical bills are admissible to support plaintiff's testimony that she was admitted into the hospital and underwent therapy, and the costs incurred as a result, although it is inadmissible to show that these services were necessary. Campbell v. Kendrick, 556 So.2d 140 (La.App. 5 Cir.1990); Andres v. Liberty Mut. Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990). However, we feel that Dr. Watermeier's testimony, construed in conjunction with plaintiff's testimony, sufficiently shows the necessity of these services as a result of this accident.

2. Fraud and Ill Practice

In his second argument, Estrade alleges that plaintiff's actions, in confirming a default some six and one-half years after filing of suit amounted to fraud or ill practice.
In Kem Search v. Sheffield, 434 So.2d 1067 (La.1983), the Louisiana Supreme Court said:
According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. Smith v. Cajun Insulation, Inc. 392 So.2d 398 (La.1980). Johnson v. Jones-Journet, 320 So.2d 533 (La.1975). Furthermore, although our courts do not sanction negligence or laches, they have not hesitated to afford relief against such judgments regardless of any issue of inattention or neglect. C.C.P. art. 2004, Official Comment *279 (b); Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); City of New Orleans v. LeBourgeois, 50 La.Ann. 591, 23 So. 542 (1898); Comment, The Action of Nullity Under Louisiana Code of Civil Procedure Article 2004, 38 La.L.Rev. 806 (1978). Thus, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Chauvin v. Nelkin Ins. Agency, Inc. 345 So.2d 132 (La.App. 1st Cir.1977), writ denied, 347 So.2d 256 (La.1977); Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir.1975); St. Mary v. St. Mary, 175 So.2d 893 (La.App. 3d Cir.1965); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1st Cir.1963), writ denied, 245 La. 640, 160 So.2d 228 (1964).
Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights. Thus, when a party fails to defend a suit because of the failure of the opposing party to warn him that a default would be taken, this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an agreement, and the enforcement of the judgment would be unconscionable and inequitable. Estelle Wilson Mortuary, Inc. v. Waker, 244 So.2d 630 (La.App. 4th Cir.1971); Engeran v. Consolidated Companies, Inc., 147 So. 743 (La.App. 1st Cir.1993); Hutton v. Fisher, 359 F.2d 913 (C.A.3rd 1966); Orange Theatre Corp. v. Rayherstz Amusement Corp., 130 F.2d 185 (C.A.3rd 1942); Moran v. Mitchell, 354 F.Supp. 86 (D.C.Va.1973); Selznick v. New York [39 A.D.2d 597], 331 N.Y.S.2d 725 (1972).
Defendant, Estrade, here argues the following. Shortly after suit was filed, the plaintiff entered into a settlement with the co-defendant, Nora Livingston, and the insurer, to the extent of all policy limits. The petition was served on defendant's mother at defendant's place of residence. Not until two and one-half years later was a preliminary default taken. The default was not confirmed until the passage of another three and one-half years. Prior to this time, plaintiff made no contact with defendant/appellant. This inaction, between the settlement and the preliminary default, and between the preliminary default and the confirmation hearing, reasons plaintiff, constitutes an improper practice or procedure which operated to deprive him of his day in court and resulted in judgment against him. Therefore, enforcement of the judgment would be unconscionable and inequitable.
We disagree. There is nothing in this record which indicates in any manner that plaintiff led appellant to believe that a default would not be taken. While it may be argued that the settlement may have led Estrade to believe the matter was completely compromised, he was put on notice that such was not the case when he was not dismissed as party to the suit. Estrade was given more than ample time to file responsive pleadings and there appears to be no excuse for not filing an answer, even a general denial, or an exception, etc.; he failed to do so; and plaintiff legally obtained a default against him in full compliance with all applicable laws. Then, too, we must not lose sight of the fact that the accident was caused through the fault and negligence of defendant, Estrade (see transcript of plaintiff's testimony) and that plaintiff was seriously injured and underwent much pain and suffering. Therefore, it would be unconscionable to deny plaintiff's recovery if this judgment was legally obtained in accordance with lawand we believe that it was.

3. Offset

In his last assignment of error, the defendant alleges that the award of damages against him should have been offset by the amount of the settlement plaintiff entered into with Motors Insurance Company. We agree.
We note that under the circumstances presented here, Estrade and Motors Insurance *280 Company, as the primary insurer of the vehicle driven by Estrade, and also as the uninsured/underinsured motorist liability insurer of Ms. Collins, are liable, in solido, for the damages sustained by plaintiff. LSA-C.C. art. 1794.
Estrade is fully bound because of his negligent actions and Motors Insurance, as Nora Livingston's insurer, is bound up to the amount of the policy limits. Likewise, Motorist, as plaintiff's uninsured/underinsured liability insurer, is conditionally bound, as its obligation is conditioned on a tort feasor's total or partial lack of liability insurance, the type of damages caused, and the policy limitations allowed by law. Egros v. Pempton, 606 So.2d 780 (La.1992).
In the present case, the trial court offered no reasons, oral or written, for judgment. A reading of the record reflects that Ms. Collins settled with Motors Insurance Company for $22,000.00broken down as follows: $10,000.00 pursuant to Ms. Collins' policy limits for uninsured/underinsured motorist coverage; $10,000.00 pursuant to Ms. Livingston's policy limits for liability and $2,000.00 pursuant to Ms. Livingston's policy limits for medical payment coverage. However, we note that the trial court awarded full recovery for past medical expenses, without crediting the $2,000.00 paid pursuant to the medical payment provisions of the insurance policy. Thus, without any reasons from the trial judge, we are forced to conclude that the trial court likewise awarded to plaintiff the full award of general damages without reducing that amount already received from Motors Insurance Company for the limits of the policies and in partial settlement of the plaintiff's claims.
For the above discussed reasons, the judgment of the trial court is amended to award the sum of $28,000.00 for general damages ($50,000.00 awarded less the $22,000.00 previously paid by the co-defendants, who were solidary obligors). In all other respects, the judgment rendered by the trial court is to remain unchanged and is affirmed.
Each party is to bear his own costs.
AMENDED, AND AS AMENDED, AFFIRMED.
WICKER, J., concurs in the decree.